IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

YASHIRA QUILES-CARRASQUILLO,

    **Plaintiff,**

            **v.**               **Civil No. 23-1468** (FAB)

LOUIS DE JOY, POSTMASTER
GENERAL
OF THE U.S. POSTAL SERVICE,

    **Defendant.**

**OPINION AND ORDER**

BESOSA, Senior District Judge.

    Before the Court are plaintiff Yashira Quiles-Carrasquillo ("Quiles" or "plaintiff") and defendant Louis De Joy, Postmaster General of the United States Postal Service ("the USPS" or "defendant")'s objections to two Reports and Recommendations ("R&R's") issued by Magistrate Judge Héctor L. Ramos-Vega. (Docket Nos. 78, 90.)  The magistrate judge issued recommendations on defendant's motion to dismiss and on the parties' cross motions for sanctions. (Docket Nos. 10, 61 and 73.)  For the following reasons, the Court **ADOPTS** both R&R's. (Docket Nos. 78 and 90.) Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the defendant's motion to dismiss, (Docket No. 10), and **DENIES** the parties' cross motions for sanctions (Docket Nos 61 and 73).

## I.    Background

Quiles brings this lawsuit pursuant to Title VII for gender discrimination, disparate treatment, sexual harassment, and hostile work environment. The following facts are alleged in her complaint and are presumed to be true and taken in the light most favorable to the non-moving party pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001) (discussing the standard of review on a 12(b)(6) motion to dismiss).

### a. The February 19, 2022 Incident

The USPS hired Quiles in 2016. (Docket No. 1. at p. 2.) She subsequently served as the Postmaster of the Luqillo Post Office.  Id.  On February 19, 2022, two USPS employees and American Postal Workers Union ("APWU") representatives, Gabriel Medina ("Medina") and Luis Soto ("Soto"), entered the Luquillo Post Office through the cargo area without authorization to do so. (Docket No. 1 at p. 2.)  Quiles asked Medina and Soto about their presence in the cargo area.  Id. at p. 3.  Soto responded that he had scheduled a meeting.  Id. Because Soto refused to provide confirmation or proof of the meeting, Quiles requested Soto and Medina to leave. Id.

This directive enraged Soto.  Id.  He moved closer to Quiles, invading her personal space in an alleged effort to threaten and intimidate her.  Id. Soto then proceeded to sexually and verbally assault her in an extreme and outrageous manner.  Id.  Soto's prolonged verbal assault on Quiles included graphic sexual language ("what kind of Postmaster are you with such a greasy ass, not even my cock reaches there, it doesn't fit in your ass"), veiled threats of violence, ("look at my face very closely for when you see me on the street, bitch"), and menacing, invasive body language. Id. at 3-6.  This verbal assault continued while Soto followed Quiles around the office spewing graphic, sexually explicit, and violent insults at Quiles.  Id.  She attempted to call the manager of USPS operations and the police. Id.

**b. Quiles Reported the Incident to USPS Management**

While the incident was ongoing, and for months afterwards, Quiles reported this incident to several people inside and outside USPS. Id. at p. 7.  Quiles told Postal Inspector Team Leader Jean Michael Budner of the February 19, 2022 incident, as well as Post Office Operations Manager Herminio Rivera, USPS District Manager Neftalí Plúguez, PR-Caribbean District Human Resources Carla Ortiz, and USPS Labor Relations Manager María Bello. Id.  She also requested and obtained a provisional restraining order against Soto from the Municipal Court of Puerto Rico in Fajardo. Id. The

Supreme Court of Puerto Rico sustained the restraining order. Id. She shared the restraining order with USPS supervisors. Id. at 7-8.

Quiles alleges that despite numerous complaints of sexual harassment the USPS failed to respond or assist her in any way. Id. at 9. Indeed, several supervisors including USPS District Manager Plúguez, ignored her altogether in spite of her repeated attempts to follow up. Id. Quiles avers that USPS management did not investigate her complaint, and did not take corrective against Medina or Soto for the incident. Id. at 8. The sexual harassment endured by Quiles was not an isolated event. According to the complaint, before Quiles reported Soto's behavior, USPS management had received similar complaints from seven other women. Id. at 12. These women denounced Soto's abusive conduct, informing USPS that Soto sexually harassed them at the workplace. It was not until August 2022, however, that USPS finally intervened and initiated disciplinary proceedings against Soto after he attacked a male employee. Id.

### c. Administrative Proceedings before the USPS' EEO Office

On October 5, 2022, Quiles submitted an Equal Employment Opportunity ("EEO") complaint to the USPS, asserting allegations of sex discrimination. (Docket No. 10-1 at pp. 16-21). In the five-page statement that she attached to her EEO complaint, Quiles

described the February 19, 2022 incident.  Id.  She also maintains that Union officials subsequently filed frivolous and unfounded grievances against her.  Id.  She further complained that USPS management knew that Soto harassed Quiles and at least seven other women but did nothing to discipline him.  Id.

The USPS National EEO Investigative Services Office accepted Quiles' first claim for investigation.  Id. at p. 23. Specifically, USPS' EEO office determined that she had been intimidated, threatened and abused by two employees, and that when she reported it, no action was taken.  Id. at 35.  The USPS' EEO office dismissed her second claim, however, because allegations of "frivolous and unfounded grievances" fall within the jurisdiction of the National Labor Relations Board, not the EEO.  Id. at 36.

## II.  Legal Standards

### a. Report and Recommendation

A district court may refer a pending motion to a magistrate judge for a report and recommendation.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(a); Loc. Rule 72(b).  Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report.  Loc. Rule 72(d).  See 28 U.S.C. § 636(b)(1).  A party that files a timely objection is entitled to a de novo determination of "those portions of the report or

specified proposed findings or recommendations to which specific
objection is made." Ramos-Echevarría v. Pichis, Inc., 698 F.Supp.
2d 262, 264 (D.P.R. 2010); Sylva v. Culebra Dive Shop, 389 F.Supp.
2d 189, 191-92 (D.P.R. 2005) (citing United States v. Raddatz, 447
U.S. 667, 673 (1980)).

Failure to comply with this rule precludes further review.
See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Borden
v. Secretary of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987).    In
conducting its review, a court is free to "accept, reject, or
modify, in whole or in part, the findings or recommendations made
by the magistrate judge." 28 U.S.C. § 636(a)(b)(1); Templeman v.
Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985); Álamo
Rodríguez v. Pfizer Pharmaceuticals, Inc., 286 F.Supp.2d 144, 146
(D.P.R. 2003).   Furthermore, the Court may accept those parts of
the report and recommendation to which the parties do not object.
See Hernández-Mejías v. General Elec., 428 F. Supp. 2d 4, 6 (D.P.R.
2005) (citing Lacedra v. Donald W. Wyatt Detention Facility, 334
F.Supp. 2d 114, 125-126 (D.R.I. 2004)).

### b. Motion to Dismiss

Pursuant to Rule 12(b)(6), a defendant may move to dismiss an
action for failure to state a claim upon which relief can be
granted. See Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6)
motion, a complaint must contain sufficient factual matter "to

state a claim to relief that is plausible on its face." <u>Bell Atl.</u>
<u>Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A Court must decide
whether the complaint alleges sufficient facts to "raise a right
to relief above the speculative level." <u>Id</u>. at 555. In doing so,
a court is "obligated to view the facts of the complaint in the
light most favorable to the plaintiffs, and to resolve any
ambiguities in their favor." <u>Ocasio-Hernández v. Fortuño-Burset</u>,
640 F.3d 1, 17 (1st Cir. 2011).

**III. Discussion**

The R&R recommends that plaintiff's disparate treatment and
a digital face altering causes of action as well as any claim
against USPS for activities attributable to APWU be dismissed.
(Docket No. 78 at p. 28.) The magistrate judge further recommended,
however, that plaintiff's hostile work environment claim be
allowed to move forward and that defendant's motion to dismiss be
denied as to this claim. <u>Id</u>. Both parties objected to the R&R.
(Docket Nos. 92 and 93.)

**a. Quiles' Objections**

**1. Quiles' Digital Face Altering Cause of Action**

Quiles did not object to the R&R's recommendation that her
digital face altering cause of action be dismissed and has
therefore waived further review. <u>See</u> <u>Davet</u>, 973 F.2d at 30-31.
The Court has nonetheless conducted a review of the record and

agrees with the magistrate judge's reasoning as to why this claim should be dismissed.

### 2. Quiles' Disparate Treatment Claim

Plaintiff does, however, set forth two specific objections to the R&R's finding that her disparate treatment claim should be dismissed. Quiles contends, (1) that she stated a cognizable disparate treatment claim pursuant to Title VII, and (2) that she properly exhausted administrative resources regarding the disparate treatment claim. (Docket No. 92.) The R&R addressed both these issues. While the magistrate judge found that Quiles had not properly exhausted her disparate treatment claim, he nonetheless analyzed the claim itself, recommending that even if the Court found her claim had been properly exhausted, it could not survive on the merits. (Docket No. 92 at p. 3)

It is well settled that a federal court will not entertain employment claims pursuant to Title VII unless administrative remedies have first be exhausted. Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009). Administrative exhaustion is required to provide the employer with notice of a potential claim and to allow for early conciliation. Id. The Title VII administrative exhaustion process in the federal context requires that the employee "first file a formal complaint with the EEO office of the allegedly discriminating agency." Rodríguez v.

United States, 852 F.3d 67, 79 (1st Cir. 2017) (citing 29 C.F.R.
§ 1614.106(a).)  Suits pursuant to Title VII in federal court are
limited to the allegations first presented in the EEO complaint
and the investigation which can reasonably be expected to grow out
of that charge. Id; see also Thornton v. United Parcel Serv., Inc.,
587 F.3d 27 (1st Cir. 2009) ("[P]laintiffs have been allowed to
allege a claim in a complaint where the factual statement in [the]
written charge should have alerted the agency to an alternative
basis of discrimination."). The exhaustion requirement is "a
condition to the waiver of sovereign immunity and thus must be
strictly construed." Id. (quoting Vázquez-Rivera v. Figueroa, 759
F.3d 44, 47-48 (1st Cir. 2014) (additional citations omitted).

     In deciding that Quiles had not properly exhausted her
disparate treatment claim, the magistrate judge determined that
the "key consideration [was] whether Plaintiff's actual
description in the EEO complaint sufficiently alleged a disparate
treatment claim" such that her this claim was "reasonably related"
or excepted to "grow out" of her EEO complaint for sexual
harassment. Docket No. at p. 13; (citing Ladenheim v. Am. Airlines,
Inc., 115 F. Supp. 2d 225, 233 (D.P.R. 2000)) (additional citations
omitted)). The magistrate judge determined, after a review of the
EEO complaint, that because Quiles did not "reasonably convey a

disparate treatment allegation," her Title VII disparate treatment claim was not properly exhausted and must be dismissed. Id.

In her objection to the R&R, plaintiff claims that the magistrate judge erred and that she had exhausted her disparate treatment claim "within the investigatory process" of the complaint before the EEO. (Docket No. 92 at p. 13-15.) Quiles argues that the EEO complaint need not state the exact language of a *prima facie* case of disparate treatment, but rather only needs to alert the agency to this basis for discrimination. Id. (citing Jenkins v. Housing Court Dept., 16 F.4th 8, 18 (1st Cir. 2021)). Arguing that she fulfilled this requirement, Quiles cites to questions posed by the EEO during the investigation and her responses which purportedly convey a *prima facie* disparate treatment claim. (Docket No. 92 at p. 14.)

After careful review of the record, the Court agrees with the magistrate judge's finding that Quiles has not exhausted her disparate treatment claim.  In evaluating whether a plaintiff's claims are reasonably related and may grow out of the initial EEO complaint, Courts analyze *inter alia* the basis of discrimination, and the perpetrators named in the EEO charges. See Soto v. McHugh, 158 F. Supp. 3d 34, 47 (D.P.R. 2016) (citing B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1100 (9th Cir. 2002)). While the initial EEO complaint does reference Soto's workplace misconduct towards other

women and management's failure to act, it does not reach the level
of disparate treatment. (Docket No. 10 -1.)  The linchpin of a
disparate treatment claim is the employer's adverse employment
action, and a similarly situated person not in the plaintiff´s
protected class. See Frith v. Whole Foods Mkt., Inc., 38 F.4th
263, 276 (1st Cir. 2022) (discussing the elements of disparate
treatment claim); see also Ortiz v. Fed. Bureau of Prisons, 290 F.
Supp. 3d 96 (D. Mass. 2017) (disparate treatment claimants bear
the burden of proving they were "subjected to different treatment
than persons similarly situated in all relevant aspects") (citing
Byrd v. Ronayne, 61 F.3d 1026 (1st Cir. 1995) (additional citations
omitted)).  Quiles' initial EEO complaint references neither.
While the plaintiff did complain that management repeatedly
ignored requests to investigate Soto, there is no discussion of
discriminatory intent, and without any similarly situated
individual, the Court finds that Quiles' EEO complaint does not
reasonably convey a disparate treatment allegation. (Docket No. 10
-1.)

Quiles next argues that even if the EEO complaint did not
mention her disparate treatment claim, she nonetheless exhausted
administrative remedies through her conversations with the EEO
investigator. (Docket No. 92 at p. 14.) Quiles demonstrates that
she specifically stated to the EEO investigator that her employer

took no action when Soto assaulted women, but took swift action when Soto assaulted a man. Id. This argument also fails, however, because conversations with an EEO investigator do not satisfy the exhaustion requirement. Courts have routinely held that statements made by a plaintiff to an agency investigator cannot expand an EEO charge where the complaint actually filed did not include such allegations. See Sanders v. Laidlaw Educ. Servs., 323 F. App'x 521, 523 (9th Cir. 2009) (holding that because plaintiff "did not include a claim of retaliation in either his original or amended charges before the EEOC . . . [his] alleged statement[s] to the EEOC investigator [are] insufficient to satisfy the exhaustion requirement"); Stallcop v. Kaiser Found. Hosps., 820 F.2d 1044, 1051 (9th Cir. 1987) (refusing to hold that statements made by a plaintiff to an agency investigator could expand the charge where the charge filed did not include such allegations); Gibson v. West, 201 F.3d 990, 992 (7th Cir. 2000) (holding that the content of conversations with EEOC investigator "did not satisfy the exhaustion requirement"); Lightsey v. Potter, 268 F. App'x 849, 852 (11th Cir. 2008) (conversations with investigators may "amplify, clarify, or more clearly focus allegations made in an administrative complaint, but they may not raise [new] allegations"); Dubie v. Buffalo Concrete Accessories, Inc., Case No. 21-744, 2022 WL 901604 at *6 (W.D.N.Y. Mar. 28, 2022) (letters

sent to the EEOC [investigator] raising additional claims of discrimination unrelated to the claims described in the EEOC charge "cannot enlarge [the] scope [of the original charge] to include new claims") (citing Littlejohn v. City of New York, 795 F.3d 297, 323 (2d Cir. 2015)). This is because information provided to an investigator does not constitute timely notice or allow for early conciliation. See Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009) (discussing the purpose of the exhaustion requirement).

Because the exhaustion requirement "must be strictly construed," the Court holds that Quiles has not satisfied the exhaustion requirement for the disparate treatment claim. Rodríguez v. United States, 852 F.3d 67, 79 (1st Cir. 2017) (explaining that the exhaustion requirement is "a condition to the waiver of sovereign immunity and thus must be strictly construed.") Consequently, the disparate treatment claim is dismissed. Because Quiles did not properly exhaust her disparate treatment claim, the Court need not address the merits of this claim.

**b. Defendant's Objections**

Defendant sets forth the following objections to the R&R: (1) the R&R erred in finding that one incident could amount to a viable hostile work environment claim; (2) plaintiff's work performance was not affected by the incident; (3) defendant did

Civil No. 23-1468 (FAB)                                                    14

not act negligently and is not liable to Quiles; (4) the alleged
conduct was not subjectively offensive to the plaintiff; and (5)
the allegations regarding USPS's discriminatory intent are
implausible. (Docket No. 93.)  The defendant also requested that
the Court strike all allegations in the complaint pertaining to
Union conduct. Id.

   **1. Quiles's Hostile Work Environment Claim**

   To prevail on a hostile work environment claim pursuant to
Title VII, a plaintiff must establish: (1) that she is a member of
a protected class; (2) that she was subjected to unwelcomed
harassment; (3) that the harassment was based on her membership in
the protected category; (4) that the harassment was sufficiently
severe or pervasive so as to alter the conditions of her employment
and create an abusive work environment; (5) that the objectionable
conduct was both objectively and subjectively offensive, such that
a reasonable person would find it hostile or abusive and the victim
in fact did perceive it to be so; and (6) that some basis for
employer liability has been established. See Nieves Borges v. El
Conquistador P'ship, L.P., S.E., 936 F.3d 1, 8 (1st Cir. 2019)
(citing Roy v. Correct Care Solutions, LLC, 914 F.3d 52, 62 (1st
Cir. 2019)).

**2. Hostile Work Environment and the February 19, 2022, Incident**

The magistrate judge recommends that plaintiff's hostile work environment claim be allowed to move forward, in part, because he determined that, while the conduct in question was confined to one incident on February 19, 2022, it was severe and egregious enough to "evince a hostile work environment." (Docket No. 78 at p. 21.) (citing <u>Noviello v. City of Boston</u>, 398 F.3d 76, 84 (1st Cir. 2005)) (additional citations omitted).

The defendant argues that the magistrate judge's recommendation is wrong as a matter of law. The defendant cites numerous cases in the first circuit that collectively show how a single incident rarely clears the threshold for a hostile work environment claim. <u>See e.g.</u>, <u>Pomales v. Celulares Telefonica, Inc.</u>, 447 F.3d 79, 84 (1st Cir. 2006); <u>Chamberlin v. 101 Realty, Inc.</u>, 915 F.2d 777, 783 (1st Cir. 1990); <u>Morgan v. Mass. Gen. Hosp.</u>, 901 F.2d 186, 192–93 (1st Cir. 1990). Although the defendant admits that a single incident *might* rise to the level of a hostile work environment, it argues that these incidents typically involve unwanted physical contact. (Docket No. 93 at p. 4) (citing <u>Pomales</u> 447 F.3d at 84).

As the magistrate judge noted, however, in evaluating hostile work environment claims, courts will distinguish between "mere

offensive utterances" and statements that are "physically threatening or humiliating." (Docket No. 78 at p. 21) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). The magistrate judge further determined that in this case the statements go well beyond mere offensive utterances, and the Court agrees. In fact, taking the allegations as true as the Court must, it is hard to imagine a scenario in which Soto's comments could be much more physically threatening or humiliating.

Defendant cites Pomales, 447 F.3d at 84, for the proposition that "successful single-incident claims typically have involved unwanted physical contact." The Court recognizes that this quote is right on point, but not for the reasons defendant believes. Because Soto's conduct and the statements he made were so extreme and prolonged, the question before the Court is whether *any* set of statements, confined to one event and absent physical touching, can be sufficient to sustain a hostile work environment claim. If the Court finds that Soto's alleged statements are insufficient to meet this threshold, it is likely no set of hostile statements would be sufficient to sustain a claim. The First Circuit Court of Appeals, *does not* "preclude the possibility of a single-incident hostile work environment claim based on exclusively verbal conduct." Pomales, 447 F.3d at 84. Given the content and duration of the threats endured by the plaintiff, the Court finds that if

any single-incident hostile work environment claim based on
exclusively verbal conduct exists, it is this one.

### 3. Adverse Employment Acts and the Plaintiff's Work Performance

The defendant next argues that the plaintiff failed to allege
how the harassment she suffered affected her terms and conditions
of employment and her work performance. (Docket No. 93 at p. 6.)
Case law cited by the defendant pertain to summary judgment
dispositions. See e.g., Ayala-Sepúlveda v. Mun. of San Germán,
671 F.3d 24, 31 (1st Cir. 2012); Bhatti v. Trs. of Bos. Univ., 659
F.3d 64, 7 (1st Cir. 2011). Given that this is a ruling on a
12(b)(6) motion, and considering that the complaint should be read
in the plaintiff's favor, the Court finds that the hostile work
environment claim survives the defendant's motion to dismiss.
Plaintiff has alleged that "as a direct result of USPS's actions
and omissions, Quiles was diagnosed with [PTSD] and [has an
increased] fear of attending to the workplace [to] perform her
duties." (Docket No. 1 at pp. 13-14.)  She further alleges that
the USPS's actions infringed on her "right to work in an
environment free of harassment and discrimination." Id.  These
pleadings are sufficient to elucidate how the harassment affected
her work performance and altered the conditions of Quiles'
employment.

### 4. The Alleged Conduct was Not Subjectively Offensive

Next, the defendant argues that Soto's conduct was not subjectively offensive to the plaintiff. (Docket No. 93 at p. 9.) To prevail on a hostile work environment claim, the plaintiff must show that the hostile conduct was both objectively and subjectively offensive. See Nieves-Borges v. El Conquistador P'ship, L.P., S.E., 936 F.3d 1, 8 (1st Cir. 2019). The defendant avers that because Quiles allegedly responded to Soto, calling him a "fat dumbass," that she was familiar with the kind of language Soto used and that it was therefore not subjectively offensive to her. (Docket No. 93 at p. 10.) This argument is unavailing. Quiles alleged that Soto's conduct was offensive to her throughout the complaint. (Docket No. 1 at p. 4.) The Court construes the complaint in the light most favorable to her. In addition, Quiles' alleged language is nowhere near as sexually charged, pervasive, or offensive as Soto's, which makes it highly implausible that Soto's language was not subjectively offensive to her.

### 5. The USPS' Liability

The defendant's final argument is that even if plaintiff can assert a *prima facie* case of hostile work environment, USPS as an employer is not liable for the alleged conduct. (Docket No. 93 at p. 10.) Defendant contends that there must be some causal connection between the harassment and negligence on the employer's

part. Id. (citing Caruso v. Delta Air Lines, Inc., 113 F.4th 56
(1st Cir. Aug. 21, 2024).  The defendant's argument again misses
the mark.  Quiles alleges in the complaint and in her EEO charge
that seven other women had filed complaints of their own against
Soto and that USPS management was aware of his behavior yet failed
to discipline him or intervene in any way prior to the February
19, 2022 incident. (Docket No. 1 at p. 12.) These allegations, if
true, could demonstrate that USPS was negligent in its duty to
discipline Soto for sexual harassment. See García v. V. Suárez &
Co., 288 F. Supp. 2d 148 (D.P.R. 2003) (Dominguez, J.) ("an
employer is negligent with respect to sexual harassment acts on
behalf of its agents or supervisory employees if it knew or should
have known about the conduct and failed to stop it") (citation
omitted).  At this early stage, these allegations are sufficient
for Quiles' claims to survive the defendant's Rule 12(b)(6) motion.
See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,
267 F.3d 30 (1st Cir. 2001) (discussing the standard of review on
a motion to dismiss).

### 6. Dismissal of Frivolous Grievance Claims

The defendant also requests that the Court modify the
magistrate judge's recommendation that the "plaintiff failed to
plead a plausible claim for relief against the USPS for conduct
attributable to the APWU."  (Docket No. 93.) The defendant moves

the Court to explicitly include the claims alleged in paragraphs 69, 87, 103, and 105 of the complaint, in any dismissal of the claims pertaining to Soto's frivolous grievances. Id. at 16. The plaintiff has responded that she did not intend to make any claim against APWU and that her only claims in the complaint are against the USPS. (Docket No. 78 at p. 27.) After review, the Court **GRANTS** defendant's requests. Insofar as the allegations in paragraphs 69, 87, 103, and 105 of the complaint plead a claim for relief against USPS for conduct attributable to APWU, these claims are **DISMISSED.**

## IV. The Motions for Sanctions

Also before the Court is the magistrate judge's second R&R, recommending that the parties' cross motions for sanctions be denied pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") be denied. (Docket Nos. 73 and 90.) In essence, the plaintiff's motion for Rule 11 sanctions states that: (1) the defendant made false or misleading statements in his pleadings, and (2) the defendant presented inadmissible, unauthenticated, incendiary, and prejudicial photographs from plaintiff's Facebook account in his ISC memorandum. Id. The defendant has also moved for Rule 11 sanctions, requesting that the Court admonish plaintiff for frivolous motions and for failing to withdraw her second motion

for sanctions even after being appraised of the procedural issues
with the motion. (Docket No. 73.)

**a. The Plaintiff's Objection to R&R on Motion for Sanctions**

The plaintiff filed an objection to the R&R (Docket No. 98)
and reincorporates her previous arguments, contending that the
magistrate judge erred by "providing [his] own interpretation
characterizing plaintiff's denouncement as a 'semantic exercise.'"
(Docket No. 98.) In plaintiff's telling, the defendant did not
properly respond to Quiles' motion for sanctions and therefore
waived any argument on his behalf. Id. Quiles argues that "the
exculpatory explanations set forth in the R&R are not the product
of defendant's arguments but those developed by the Magistrate
Judge without any input from the defendant."   Id.

This argument is unavailing.  In drafting his recommendation,
the magistrate judge is entitled to discretion and to interpret
the facts as he sees them. See United States v. Raddatz, 447 U.S.
667, 683 (1980) (discussing magistrate judge's discretion and
ability to make factual determinations on behalf of the Court).
Furthermore, the Court has reviewed the underlying complaints by
the plaintiff and agrees with the magistrate judge's
interpretation of the facts.  The defendant's reading of Potts v.
Howard Univ. Hosp., 258 F. App'x 346 (D.C. Cir. 2007), and his
request that the Court dismiss portions of the complaint for

Civil No. 23-1468 (FAB)                                              22

failure to join an indispensable party are not nearly egregious
enough, nor so clearly wrong, as to be false or misleading.    In
addition, the inclusion of photographs in the ISC memorandum by
the defendant, while perhaps unnecessary, does not prejudice the
Court.  Should the defendant seek to use the photographs at trial,
the plaintiff may file a pretrial motion *in limine* to exclude them,
or move to exclude them during the trial.  For these reasons, the
Court holds that Rule 11 sanctions are unwarranted at this time.

**b. The defendant's Objection to R&R on Motion for Sanctions**

The defendant does not object to the magistrate judge's
recommendations and has therefore waived review. See Davet v.
Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992) Rather, the defendant
seeks to clarify and reconsider the portion of the R&R that might
be construed as a finding misconduct on the part of defense
counsel. (Docket No. 94.)   As discussed above, the Court has
carefully reviewed the record and agrees with the magistrate
judge's determinations.   The Court clarifies, however, that it
**does not** find that the attorneys for the defendant have committed
any professional misconduct in the prosecution of this case.

**V. Conclusion**

For the above reasons, the Court **ADOPTS** both R&R's (Docket Nos.
78 and 90). Accordingly, the Court **GRANTS IN PART** and **DENIES IN**
**PART** defendant's motion to dismiss. (Docket No. 10.)   The

Civil No. 23-1468 (FAB)                                                    23

defendant's motion to dismiss is **DENIED** as to the hostile work environment claims and **GRANTED** as to the disparate treatment and digital face altering causes of action, as well as to claims against the USPS for activities attributable to the APWU. Furthermore, the plaintiff's motion for sanctions (Docket No. 61) and the defendant's motion for sanctions (Docket No. 73) are both **DENIED.**

      **IT IS SO ORDERED.**

San Juan, Puerto Rico, January 3, 2025.

                        <u>s/ Francisco A. Besosa</u>
                        FRANCISCO A. BESOSA
                        SENIOR UNITED STATES DISTRICT JUDGE